IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| CHERRY ZIELASKOWSKI,<br><br>      Plaintiff,<br><br>vs.<br><br>ALBUQUERQUE PUBLIC SCHOOLS,<br><br>      Defendant. | No. CIV 01-0419 PK/DJS |

MEMORANDUM OPINION AND ORDER

THIS MATTER comes on for consideration of Defendant Albuquerque Public Schools' Motion for Summary Judgment filed March 21, 2002 (Doc. 25). Upon consideration thereof,

(1) <u>Background.</u> Plaintiff is a classroom teacher. Her complaint indicates that she suffers from Lupus, an autoimmune disease, and rheumatoid arthritis. Doc. 1, at 3, ¶ 16. She has had a knee replaced. Doc. 27 at 1. On summary judgment, she contends her principal disability is "her special vulnerability to infectious diseases which limits her ability to interact with small children in the classroom who have common respiratory diseases." Doc. 27 at 6; <u>id.</u> at Ex. 3. She also contends that exposure to sun, stress and field trips worsen her impairments. <u>Id.</u> at 6. According to the Plaintiff, she suffers from periodic

medical emergencies that require treatment during working hours. Id.

(2) In this action, she alleges that Defendant ("APS") failed to reasonably accommodate her in violation of the ADA when it did not place her into a non-classroom position in August 1998.[1]  See 42 U.S.C. § 12112(b)(5)(A). Plaintiff filed a similar ADA claim in August 1997 which she withdrew after APS placed her in a curriculum resource teacher position, a position outside the classroom. Doc. 26, Ex. A at 138-39. In addition to her ADA claim (count I), Plaintiff's complaint also claims state-law breach of employment contract (count II), and breach of the implied covenant of good faith and fair dealing (count III).

(3) <u>Summary Judgment Standard</u>. Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A movant is responsible for identifying the basis of its motion, which it may support with material demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Here, the moving Defendant relies upon the Plaintiff's deposition testimony and her two charges of discrimination.

---

[1] According to Plaintiff's complaint, her "reasonable accommodation request requires no heavy lifting and minimal exposure to communicable diseases such as strep throat, flu and viruses." Doc. 1 at 3, ¶ 19. Plaintiff filed a charge of discrimination in August 1998 and obtained a right-to-sue letter dated January 18, 2001. Doc. 1, Ex. A; Doc. 26, Ex. C. Plaintiff's complaint is that she was not reassigned as a curriculum resource teacher during the 1998-99 school year. Doc. 26, Ex. A at 97-98.

In opposing a summary judgment motion, the non-movant may not rest upon her pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-movant is not required to produce evidence in a form admissible at trial, but must respond with material other than the pleadings themselves, i.e. depositions, answers to interrogatories, admissions on file and affidavits. <u>Celotex</u>, 477 U.S. at 324; Fed. R. Civ. P. 56(c). A court considers all evidence and reasonable inferences therefrom in the light most favorable to the non-movant; however, that material must contain probative evidence that would allow a trier of fact to find in favor of the non-movant. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986). Disputes about immaterial facts will not preclude summary judgment. <u>Id.</u> at 248.

(4) <u>Plaintiff's Deposition Testimony Counts.</u> "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." <u>Celotex</u>, 477 U.S. at 323-24. Plaintiff contends that several factual concessions made at her deposition should be disregarded in favor of her subsequent affidavit because (1) the deposition was held less than two months after she had a heart attack, (2) she was grilled and badgered by opposing counsel, causing great pain and humiliation, and (3) the deposition terminated with an acrimonious exchange between counsel. Doc. 27 at 2; <u>id.</u>, Ex. 1 at ¶¶ 42, 44; <u>id.</u>, Ex. 2 at 176-80. Although the court does not condone the lack of civility which accompanied the termination of the deposition,

a plaintiff may not create sham factual issues which contradict her deposition. Here, Plaintiff appeared with counsel at the deposition who had the opportunity to examine her, she plainly had access to information concerning her medical conditions and daily activities, and nothing suggests confusion requiring additional explanation. See Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 973 (10th Cir. 2001). According to Defendant, she also signed the deposition without correction. Doc. 28 at 4. Although Plaintiff recites in her affidavit that the deposition was never completed and that she "had much more to say," Doc. 27, Ex. 1 at 7, ¶ 47, this does not equate with confusion or justify disregarding her deposition answers.

(5) Plaintiff May Not Rely Upon 1997 Events as the Actionable Basis of her ADA Claim. At her deposition, Plaintiff indicated that the foundation of her claim against APS occurred during March-May 1997 when she underwent plasmaphersis and APS failed to accommodate her. Doc. 26, Ex. A at 33-34; see also Doc. 27, Ex. 1 at 4, ¶ 25 & Ex. 2 at 172. She then indicated that it was "not a closed box" and added the events which led in part to the August 1997 charge (dismissed by Plaintiff when APS placed her as a curriculum resource teacher). Doc. 26, Ex. A at 35. Finally, she discussed her placement in the 1998 school year which forms the basis of the ADA claim in this lawsuit. Id.

In the Tenth Circuit, exhaustion of administrative remedies is a prerequisite to a Title VII claim. Jones v. Runyon, 91 F.3d 1398, 1399-1400 & n.1 (10th Cir.

1996). The requirement of administrative exhaustion pertains to ADA claims. 42 U.S.C. § 12117. Plaintiff may not rely upon the 1997 events as the actionable basis of her ADA claim. She did not exhaust those 1997 claims and they did not occur in close enough proximity (within 300 days) to the filing of the August 1998 charge to be actionable. See 42 U.S.C. §§ 2000e-5(e)(1) (300-day window); 42 U.S.C. § 12117(a) (Title VII procedures apply to ADA actions). Because Plaintiff was aware of the basis of her 1997 complaints at the time she filed her August 1997 charge, she may not rely upon a "continuing violation theory" to avoid this problem. See Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1311 (10th Cir. 1999). The 1998 charge plainly pertains to Plaintiff's dissatisfaction with the lack of placement for the 1998-99 school year. Merely by indicating on the 1998 charge that it was a "continuing action" with the latest discrimination occurring on August 6, 1998, Doc. 26, Ex. C, does not sweep the 1997 events into this action.

Finally, equitable tolling is inappropriate in this case in the absence of any allegations that APS deceived or misled her about her rights. See Mosley v. Pena, 100 F.3d 1515, 1518 (10th Cir. 1996). Plaintiff states: "I withdrew my [1997] EEOC charge in exchange for this position which I filled for the 1997-1998 school year." Doc. 27, Ex. 1 at 5, ¶ 31. Thus, the parties made their peace, Plaintiff was given the position she wanted, and should not be allowed to equitably toll the statutory period. Although Plaintiff further states that she

"expected that APS would resume this reasonable accommodation" in the 1998-99 school year, id., Plaintiff's unilateral expectation, without more, is insufficient to prove that she was deceived by APS.

(6) ADA and a Prima Facie Case.  The ADA provides that no covered employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  A "disability" is "a physical or mental impairment that substantially limits one or more of [an individual's] major life activities"; "a record of such an impairment"; or "being regarded as having such an impairment."  42 U.S.C. § 12102(2).  Here, Plaintiff's complaint asserts that she is disabled so the first definition applies.  Doc. 1 at 3, ¶ 16.  To establish a prima facie case of discrimination under the ADA, a plaintiff must show (1) that [s]he is disabled within the meaning of the ADA; (2) that [s]he is qualified–with or without reasonable accommodation; and (3) that [s]he was discriminated against because of [her] disability.  MacDonald v. Delta Air Lines, Inc., 94 F.3d 1437, 1443 (10th Cir. 1996).

(7) ADA and the Meaning of "Disabled." Whether an individual is considered disabled under the first definition depends upon (1) whether the individual has an impairment, (2) identifying the life activities the individual claims to be affected by the impairment and determining whether they constitute "major life activities" under the ADA; and (3) asking whether the impairment substantially limits the major life activity. Bragdon v. Abbott, 524 U.S. 624, 632, 637, 639 (1998); Doyal v. Oklahoma Heart, Inc., 213 F.3d 492, 495-96 (10th Cir. 2000). Steps (1) and (2) are legal determinations for the court; step (3) is factual. Bristol v. Bd. of County Comm'rs of the County of Clear Creek, 281 F.3d 1148, 1158-60 (10th Cir. 2002).

(8) Plaintiff's Impairments. Plaintiff is responsible for identifying the impairments and major life activities involved. Poindexter v. Atchison, Topeka & Santa Fe Ry. Co., 168 F.3d 1228, 1230 (10th Cir. 1999). The complaint, the initial pretrial report and the pretrial order, Doc. 32 at 5-6, list the impairments as Lupus and rheumatoid arthritis, as does Plaintiff's initial charge, Doc. 26, Ex. B. In her affidavit, Plaintiff discusses diabetes resulting in pancreas failure in December 1997, and a heart attack occurring in October 2001, well after the alleged discrimination.[2] Doc. 27, Ex. 1 at 5, ¶¶ 42, 45; see also Doc. 32 at 3

---

[2] Although Plaintiff states she has diabetes that resulted in pancreas failure in December 1997, she nowhere indicates that the diabetes is uncontrollable, see Sutton v. United Airlines, Inc., 527 U.S. 471, 483 (1999) (diabetic whose

(continued...)

(pretrial order, noting that Plaintiff "suffers from Diabetes, heart problems, Rheumatoid arthritic condition and Lupus"). In deposition testimony submitted, Plaintiff discussed compressed disks and spinal cord compression, also presumably as effects of her impairments. Doc. 27, Ex. 2 at 65. Plaintiff has also reviewed her medical conditions in her affidavit. Id., Ex. 1 at 2-3, ¶¶ 7, 11, 15, 17.

It is not entirely clear whether Plaintiff is claiming that "periodic medical emergencies" constitute impairments or effects of impairments. Doc. 27 at 6. But in determining whether a person is disabled within the meaning of the ADA, measures that mitigate an impairment, such as treatment and medication, must be considered; likewise, the harmful side effects, if any, of mitigating measures are also pertinent. Sutton v. United Air Lines, Inc., 527 U.S. 471, 482-84 (1999).

(9) Major Life Activities. In her brief, Plaintiff claims that various life activities are affected including her ability to stand, walk, interact with others (due to her vulnerability to infections), see Steele v. Thiokol Corp., 241 F.3d 1248, 1255 (10th Cir. 2001) (declining to decide whether interacting with others is a major life activity), and that her recurring medical emergencies interfere with

---

²(...continued)
condition does not impair daily activities is not disabled for ADA purposes merely because of diabetes), but does indicate that she returned to work in January 1998. Doc. 27, Ex. 1 at 7, ¶ 45. Insofar as her heart attack on October 26, 2001, it does not appear to have been the basis of the disability claimed in her 1998 charge of discrimination. Id. at 6, ¶ 42.

her ability to care for herself and work.  Doc. 27 at 5-6.  See 29 C.F.R. § 1630.2(i) & pt. 1630 App. § 1630.2(1) (interpretive guidance).  She has not articulated an inability to lift, though it is mentioned in the complaint.  See Bristol, 281 F.3d at 1161 n.4 (indicating that an articulated lifting restriction in an of itself is not substantially limiting).  She contends that she is limited in her ability to interact with small children in the classroom because of potential exposure to common respiratory diseases, that she must minimize the amount of standing or walking she does, that she is notified by the nurse of communicable diseases, that she cannot be exposed to direct sunlight, field trips with students, and stress, and that once in a while she wears a mask.  Doc. 27 at 5-6; id., Ex. 2 at 61-64.

(10) Impairments Must Substantially Limit Major Life Activities.  Even assuming the impairments and major life activities as set forth by the Plaintiff, no reasonable trier of fact could conclude that her impairments substantially limit these activities on this summary judgment record.  For a physical or mental impairment to be "substantially limiting" on a major life activity, an individual must be:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
> (ii) Significantly restricted as to the condition, manner or duration under which [she] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1) (2001).  In Toyota Motor Mfg., Kentucy, Inc. v. Williams, 534 U.S. 184, 122 S. Ct. 681 (2002), the Supreme Court explained what being "substantially limited" meant in the context of performing manual tasks.  In addition to having an impairment that is permanent or long-term, "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives."  534 U.S. at ___, 122 S. Ct. at 691.  Limitations regarding "occupation-specific tasks" are not necessarily sufficient to prove that one has a substantially limiting impairment–the limitation must also be on an activity that "is an important part of most people's daily lives."  534 U.S. at ___, 122 S. Ct. at 693.  The inquiry is still specific to the individual, and a person's ability to compensate for the impairment is highly relevant.  Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 565-66 (1999).  In conducting an individualized inquiry, a trier of fact must consider what activities one can perform.  Toyota Motor, 534 U.S. at ___, 122 S. Ct. at 693-94.

(11) <u>Impairments Do Not Substantially Limit Major Life Activities.</u>  On deposition, Plaintiff testified that she was a classroom teacher and her current medical condition does not affect her ability to communicate, to see with glasses, to hear with a hearing aid, to walk unassisted (but not for a long time), to breathe (although she has asthma and must take medication and use an inhaler), and to

learn. Doc. 26, Ex. A at 6, 8-9, 53-57, 61.  Because of her treatments, she no longer does after-hours educational consulting.  Id., Ex. A at 57-60.  She must avoid exposure to the sun, using sunscreen and wear clothing that prevents exposure to the sun.  Id., Ex. A at 64.  She does not lift anything over five pounds given spinal problems.  Id., Ex. A, 64-65.  Additionally, the school nurse notifies her of communicable diseases and she carries a mask that she occasionally uses.  Id., Ex. A at 61-62.

In her affidavit, Plaintiff states:

> Despite all the foregoing events, I have tried my very best to maintain my family obligations, perform my daily life activities which include, keeping up my house, my property, maintaining my family ties, gardening, quilting, my book in progress about Lupus, curriculum development, school youth activities, teaching, bible club, science fair club, church activities, and developing an Inter-generational program for community elders to work with students in the animal-husbandry and outdoor gardening.

Doc. 27, Ex. 1. at 6, ¶ 41.

(12)  Given this evidence, Plaintiff simply is not disabled as defined by the ADA.  Though Plaintiff may have several impairments, she must also show that they substantially limit a major life activity.  Toyota Motor, 534 U.S. at ___, 122 S. Ct. at 691.  Plaintiff has not shown that she is prevented from or severely restricted "from doing activities that are of central importance to most people's daily lives."  Id.  The summary judgment evidence suggests that she can stand, walk, lift items five pounds or less, interact with others, and that any recurring

medical emergencies do not interfere with her ability to care for herself and work on a permanent or long-term basis.  See id. (impairment must be permanent or long-term); see also Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 468-71 (4th Cir. 2002) (temporary medical conditions are not disabilities under ADA). Merely because she is limited in her ability to interact with small children in the classroom because of potential exposure to common respiratory diseases is an occupation-specific limitation.  Sutton, 527 U.S. at 482; 28 C.F.R. § 1630.2(j)(3)(i) ("The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.").  That she must minimize the amount of standing or walking she does, that she is notified by the nurse of communicable diseases, that she cannot be exposed to direct sunlight, field trips with students, and stress, and that once in a while she wears a mask, do not constitute the kind of substantial limitations on major life activities that the ADA was meant to address.

(13) Supplemental Jurisdiction Declined.  Given summary judgment on the federal ADA claim, the court declines to exercise jurisdiction over the supplemental state law claims.  28 U.S.C. § 1367(c)(3); Lancaster v. Indep. Sch. Dist. No. 5, 149 F.3d 1228, 1236 (10th Cir. 1998).

NOW, THEREFORE, IT IS ORDERED

That Defendant Albuquerque Public Schools' Motion for Summary Judgment filed March 21, 2002 (Doc. 25), is granted in part and summary

judgment will enter on Count I (ADA) of the Complaint

That Counts II and III (state-law breach of contract and breach of the implied covenant of good faith and fair dealing) are dismissed without prejudice.

That Defendant Albuquerque Public Schools' Motion to Strike Affidavit of Cherry Zielaskowski served March 21, 2002 is denied.

DATED this 10th day of April 2002, at Santa Fe, New Mexico.

*Paul Kelly Jr.*
United States Circuit Judge
Sitting by Designation

Counsel:

Gilbert J. Vigil, Albuquerque, New Mexico, for Plaintiff.

Arthur D. Melendres, Max J. Madrid, and Michelle A. Hernandez, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, New Mexico, for Defendant.